and we'll begin with our first argument in CW Capital Cobalt v. Federal National Mortgage Association, No. 18-2483. Good morning, Your Honors. May it please the Court, my name is David Grace and I represent the appellant. In denying Cobalt's motion to intervene, the district court abused its discretion by making two basic errors of law. The first and most serious was that the district court required more than a minimal showing that Appaloosa would not adequately represent the interests of Cobalt, and the second is that the district court misapplied the concept of prejudice when it denied the motion to intervene. The most serious of these errors was that the district court required more than a minimal showing that Appaloosa was untimely. Let me just interject. So the district court also considered the motion untimely. Do you agree that it was untimely? You're not challenging that determination? I do not, Your Honor, because the reason the district court determined that it was untimely is that it was prejudicial. But the district court erred in thinking that it was prejudicial for the reasons that I had planned to address in a moment but I'll be happy to address now. Well, I am right, aren't I, that notice was delivered by the trustee in 2015, right? And I gather there's some dispute about exactly when your client learned about the proceedings in Minnesota that were transferred. But there was no motion until, like, 2017, I think, to intervene. Is that right? After judgment on the pleadings? The reason, Your Honor, is that the directors of our client entity had been appointed by our adversary CW. It was not until OCCIF bought interests in the securities issued by the appellant Cobalt that CW lost control of Cobalt and was no longer able to leave Cobalt on the sidelines by failing to notify the directors of the pendency of this litigation in which their interests were adverse. Once OCCIF took an interest in Cobalt, it realized that the previous directors were conflicted. It installed unconflicted directors, as we put in the affidavit of one of those new unconflicted directors. They did an investigation. Upon investigating, they authorized Cobalt to bring litigation and also to intervene, which Cobalt's counsel did immediately after the district court denied the cross-motions for judgment on the pleadings. I wonder if I might ask a question there, a point of clarity. The intervention motion was filed in late spring, March 30th of 2018. The independence, if you will, happened at the latest in the summer of 2017, and your reply brief refers to an investigation. However, isn't a 12C ruling a ruling on the merits? And wouldn't a prudent company, in the summer of 2017, being aware at that time that it is now independent and able to intervene, even though it may not be quite sure of the parameters of whether it will be able to protect its interest, why did it wait from the summer of 2017 all the way until the end of March of 2018 to file the intervention motion after the 12C? It seems that was an awful long time, and to a 12C being a motion on the merits, they are well into the merits of the case at that point, engendering a possibility at least procedurally of more prejudice to the existing parties. No? I think there are two reasons, Your Honor. One is simply the complexity of what was required to be investigated. And the other is the fact that the 12C motion was made obviously before the beginning of discovery. And I infer, although I have not interviewed trial counsel, that they decided that the likelihood of the 12C motion being granted was small without discovery, and that is indeed what turned out to have happened. And as soon as it was denied, then they made their motion. Right. But it is quite unusual to make a motion that late, is it not? After a 12C. I mean, discovery had already begun. The case had been going on for some time. I don't think that much, if any, discovery had taken place, Your Honor. I think the purpose of the 12C motion was to try to resolve the case without the need for discovery. That failed. Discovery took off in earnest after the denial of the 12C motions. If the cobalt had been allowed to intervene then, it would have been able to participate in the discovery. Obviously, if it's allowed to intervene now, it's going to have to catch up on a lot of discovery that has already been taken. But I would offer the Court two points about that. The first is that in the debate in the briefs about which arguments cobalt would make if it were participating in the case, cobalt is at the disadvantage of having had no access to discovery materials until about a month ago when some of them were unsealed, and actually two days ago when more of them were unsealed. And secondly, the district court has ample power to ensure that if cobalt and its able trial counsel participate now, they do so only on issues on which Appaloosa's representation of their interests has truly been inadequate. Neither cobalt nor the district court is going to be interested in proffering issues that have already been adequately put before the Court. But there are a lot that haven't, and upon the review of the discovery material, cobalt and its trial counsel are likely to find more than it haven't. Just to follow up for a moment more on Judge Stansu's point, what investigation was needed to determine that at least an expression of interest or placeholder motion should be filed? I thought the extent of the interests of your client being orders of magnitude larger than Appaloosa's would have been apparent at the very moment that the independence was achieved. Your Honor, I can't comment out of any firsthand knowledge of that, of course. But the size of the holdings was no secret to anybody, was it? The size of the holdings was no secret, but as Appaloosa has argued at length, it seems to think it has a plausible case for why its interests adequately protect in cobalts, and I can attest from having had to learn and master this case in the 90 days that it took me to do so before filing our brief in this Court that it's a complicated case that is not easily absorbed as quickly as the amounts involved  The amounts involved might not be easily absorbed. Kagan, but again, since the amounts are part of the underlying theory about why Appaloosa can't adequately protect your interests, I would have thought also that you could have avoided substantial prejudice by filing in a timely way a motion to intervene as soon as independence was achieved. But why don't you go ahead? We've taken some of your time. Make another model. Let me ask you something else. Of course. Does this necessarily settle the matter forever? Because it seems to me that the orders of the district court denying intervention largely substantially on the basis of your being protected by other litigants who have the same interest, now you have a response to that, a possible response that that could change and circumstances could change so that the persons who now have interest and protect your interest might in the future cease to be so positioned so that they no longer adequately protect you. If that happens, would you not then be in a position to go back to the district court and say now things have changed and now we are really exposed by having no one there who represents our interests? If only it were so, Your Honor. The problem is that we have no way of knowing. If Appaloosa had undertaken No, because Appaloosa has never undertaken to the district court that it will update disclosures about its holdings. Appaloosa trades in and out, we believe, trades in and out of these securities fairly often, but certainly we don't, but nor does the district court have any idea what its holdings are. And as its holdings change, the risk of poor representation of Cobalt's interests increase. We alluded to or mentioned that in footnote 6 of our reply brief, where interests will shift depending upon whether the distribution date is January of 16 or the date on which distribution is made, but there are also unknown and unassertainable risks to a collusive settlement that the district court is not in a position to evaluate because it doesn't know what Appaloosa's holdings are. So in theory, Your Honor would be right if only Appaloosa's holdings were transparent, but they are not. And that is one of the major reasons why the district court erred in thinking that it represents our interests adequately. The kernel of the district court's error in that respect was its assumption or its statement that the issue before it was binary, that these the distributed amount was either all penalty interest or it was all gain on sale proceeds. If that were true, then, yes, it would be correct that Appaloosa and Cobalt would have only one side of that coin, and obviously CW would have the other. But that is not true, as the district judge recognized when the trustee petitioned for instructions. It asked for instructions not about whether it was one or the other, but how much of it was one and how much of it was the other. And once it became clear that the issue is not binary but continuous, then there opened up the possibility of manifold differences of interests, and the district court's view of them was obscured by its undue fascination with the concept of the same ultimate objective. In litigation, over half a trillion dollars between three sophisticated hedge funds, everybody has the same ultimate objective, which is to recover as much money as they can. But that obscures the fact that that's really at that level just a platitude, and it obscures the fact that below that level, interests can be wildly adverse as they are here, and in fact, we can't even say how wildly adverse they are for two reasons. One, as I just mentioned to Your Honor, Judge LaValle, we don't know what the holdings are, and the second is, until recently, you've had no access to discovery materials and still have very incomplete access to discovery materials. So the parties are able to offer arguments based on their full knowledge of the discovery record. Appaloosa is able to offer arguments based on full knowledge of its holdings, and Cobalt is able to offer full arguments based on neither one of those, all because the district court misunderstood the nature of the issue before it as dichotomous. Roberts. As to your not having access to discovery materials, had you, and another point, which is the district court was apparently concerned that allowing you into the case might result in your raising things that would overcomplicate the case and send it into different, had you entered, had you, I think the answer to this is no, but couldn't you have proposed to the district court, A, that you have access to the discovery materials even though not allowed to intervene so that you would be better aware of the possibility of your needing, of your not having representation from other parties, and also, but having access to discovery materials under obligation to keep them confidential as other counsel do, and also undertaking to give up any claims that you might make that might go into the directions that the district court didn't want to have this case complicated by? Well, that's a large subset of the relief of intervention, Your Honor, and I believe that that is exactly what would happen if this Court reversed now and sent the case and did permit Cobalt to intervene. Cobalt would, of course, have access to discovery materials only under the protection of the district court. Oh, yes, if you intervene, but I mean short of intervention. Well, but what that would not allow is for Cobalt to make whatever arguments it needed to make, and it persuaded the district court that it needed to make. I would ask the court not to lose sight of the power of the district court to control the proceedings before it. Cobalt and its very able trial counsel have no interest in offering arguments to the district court that Appaloosa has adequately made on its behalf. So there is scant risk of duplication, and whatever risk of duplication there is, the district court has ample power to control. It is a virtual certainty that if Cobalt is going to ask the district court to consider arguments, yes, they may be prejudicial in the sense that it will be time and effort that the current parties are required to expend for them, but by definition they will be arguments that Appaloosa has not previously put forth, because otherwise Cobalt wouldn't do so. So the concept of new issues being interjected in the case should be understood as only those new issues on which Cobalt believes that it hasn't been adequately represented. Why else would it try the patience of the district judge? Thank you very much. We'll hear from your adversaries. Thank you, Your Honor. You can raise the podium if you like. I think I've got it maxed out, Your Honor. Good morning. My name is Greg Cross on behalf of CW Capital Asset Management. I'd like to start by updating with respect to where we stand on proceedings in the case. Discovery is closed. Expert discovery is closed. We spent the summer briefing summary judgment, and on August 28th, summary judgment was fully submitted in front of the trial court. With respect to the two issues that Cobalt, I'm going to refer to them as Cobalt VR. As Cobalt VR said would not be raised, in fact, Appaloosa moves expressly for summary judgment with respect to the calculation of default interest. You can take judicial notice of that from the docket. So whether there were any offsets is squarely in front of the court. It was fully briefed by both sides. Whether the foreclosure judgment affected the calculation of interest is fully briefed in the motions for summary judgment. And whether default interest accrues once a property becomes what's known as real estate owned or REO was fully briefed. So both of the hypotheticals that would not be put before the district court are in fact squarely before the district court on summary judgment. Now, I'd like to answer the question that you were posing, why the delay? Well, the reason we don't get an explanation for the delay is because it was purposeful and tactful. There was no relationship, nor is there anything in the record other than a statement in the request for judicial notice that my client in any way controlled the entity that OXIF hijacked by replacing the directors. The entity was merely a shell entity in the Cayman Islands which issued notes to facilitate a financing. That's why we have the unfortunate overlap of names. But there was no control by my client over those directors. Separately, a private equity fund acquired bonds and replaced the directors under threat of litigation. The existing directors never said that they had a conflict of interest. They said that they were not adequately equipped to pursue litigation. When that private equity entity took over Cobalt v. R., Cobalt v. R. adopted an entirely different litigation plan. And that litigation plan was, we're entitled to half of whatever you get, CW Capital Asset Management. And that's what the subject of the state court litigation was. They wanted 50 percent of what CW Capital Asset Management was going to receive. So they were more than happy to sit back and have us win. They filed that case in December of 2016 in federal court. Only when they saw that the case was going to be dismissed and the defenses that we were going to make did they suddenly change their mind and say, we better hop on the other side and try and argue in this TIP proceeding. And it's not a coincidence that on the day of the dismissal of the federal court case is the day that their intervention was denied. Now, an additional fact that you can take judicial notice of is Judge Maisly in the 2014 counts, including the one to the 50 percent, and in doing so has set forth another collateral issue that would come up here. She has found that Cobalt v. R. is not the registered owner of the bonds and that Cobalt v. R. is not a party to the PSA. So were this court to send the matter back down, the very first issue we will be raising is that they have no standing to assert anything in this case because they're not an appropriate party to be heard in a TIP proceeding. That's exactly the sort of complexity that Judge Fala said she did not want to interject. And that finding, by the way, was appealed on a preliminary injunction ruling to the First Department and affirmed. And the index record for the Judge Maisly's decision from August dismissing the counts is 653277, 2018. So this was not by accident. Now, also, the premise of the argument in front of you is that Cobalt v. R. would receive, and it's a given, all the proceeds. That too is not necessarily true. Last month, Wells Fargo, as master servicer for this trust, initiated another TIP proceeding in Minnesota. And you can find that at Case 19-CV-2416. And that TIP proceeding says that should additional proceeds be received by the master servicer, they should be distributed as of the holdings of the next distribution date, not as of a retrospective date. Now the request concerns other funds that are currently held, but it will be bonding on all certificate holders and control the distribution here. Their entire premise that they have a higher stake is that a distribution would be made as of bond ownership January 2016. Almost all of their bonds have been written down. Appaloosa now has most of the bonds. So the pleadings that are in front of you and the wait has actually shifted to the younger end of the table as to who has the greater interest. But they still have an aligned interest. The last thing that I want to say, because it was brought up in a footnote in the reply, is there was a request that certainly allowed an amicus brief. Now, Judge Fahill has said, if you think you can meet the standards for an amicus, come forward. The summary judgment briefing was not a mystery. It's publicly filed. Yes, there's some facts that are not disclosed. They've never made a request to file an amicus brief. And they didn't make the request because they can't satisfy the standard. They'd have to show they weren't adequately represented and all the points they wanted to be raised are raised. And they can't be an amicus because they have a financial interest. And they shouldn't be allowed an amicus because it would be unduly prejudicial. I mean, they should not be rewarded for delay. They slow rolled this appeal because they were hoping for a last look. I mean, I would love to be able to try all my cases and come in after 20 depositions have occurred, six expert reports have been opined, look at all the briefs and say, I'll choose that one. Everyone else in this case fought through what will be four years in December. Our clients had to take positions. Our experts had to take positions. We produced millions of pages of documents. And we should not be subjected to an after-the-fact, let me have an amicus just because. They don't meet the standards. In the one case that they cite, I have difficulty pronouncing it, Cantanzano, doesn't stand for that. The judge had already allowed an amicus in the case. And the Second Circuit was saying there's a new question posed, and certainly we think the judge would allow you to opine on that new question, which is exactly what Judge Vaila said to Innisoft, the sort of implicit affiliate of Cobalt v. R. She said, look, if there's a new issue, we'll address it then and the appropriateness then. But nothing is new here. We have the same issues in front of the Court that we had in 2015. Thank you very much. Thank you very much. Mr. Redburn. Thank you, Your Honor. May it please the Court. Thomas Redburn, Lowenstein-Sandler for Appaloosa. Where I'd like to begin is actually where my adversary began, which was the two fundamental errors that he contended the district court made. The first was that in Cobalt's view, the district court committed an error of law in the way that it analyzed the adequacy of representation issue. Now, I never actually heard what the error of law was, and I think if you read their briefs, you will not find an argument that the district court made an error of law. What you'll find is an argument that the district court abused its discretion. In point of fact, what the district court found was that Appaloosa's and Cobalt's interests were aligned as to the fundamental question in the case, which is, is this pot of $750 million that was realized from the sale of Stytown properly classified as penalty interest and yield maintenance, which is what CWC and the GSEs contend, or is it properly characterized under the PSA as gain on sale proceeds and then flow to the certificate holders, which is what Appaloosa contends? Cobalt absolutely agrees with that argument. They love that argument. They want us to press that argument to the max, and as a result, Cobalt and Appaloosa share the same ultimate objective. And the case law in this circuit is crystal clear that where two parties, where the proposed intervener and an existing party share the same ultimate objective. So that — I understand that argument, but I understand them also to be arguing that that's the ultimate objective, but then they — you have different second-best objectives. But here's the — yes, but here's the crucial legal point. That is their argument. Here's the crucial legal point. Once you concede that the parties share the same ultimate objectives, then they have to overcome a presumption of adequacy of representation. And the only way they can overcome that presumption under this circuit's law is by showing adversity of interest, incompetence, nonfeasance, or actual collusion. What about their argument, though, that they don't really know? They can't tell how large Appaloosa's interest is. It's changing. It's not transparent. And therefore, Appaloosa's objectives may change over time, and they don't know. So they feel inadequately protected and represented. So the primary response to that is that, sure, Appaloosa's positions have changed over time, and they have — we have, in fact, publicly disclosed those at various points in time. For example, when we filed our amended cross-claim against CWC in the district court last year, we had as part of that to demonstrate — we were required as part of that to demonstrate that we satisfied the 25 percent voting rights threshold in the no-action clause in the PSA. And at that time, we disclosed what our holdings were in the C30 trust, and I believe some of the other trusts, too. However, the more fundamental point with respect to that is that, notwithstanding the fact that Appaloosa's holdings have changed over time periodically, the way that we have approached this litigation and the arguments that we have made have not. We sued CWC in state court in New York back in November of 2015, before the Stuytown sale even took place, and long before the trustee took action. And our position all along has been that money that CWC is contending is penalty interest, that belongs to the certificate holders. And in our initial objection that we filed in Minnesota to the TIP proceeding once it was — once it was put forth, we made the two arguments that Cobalt is complaining we have. Okay? We made the argument that — that penalty interest stops accruing upon the entry of the foreclosure judgment, and once the deed in lieu comes in, there then becomes a fact question as to whether or not that somehow constitutes abandonment of the foreclosure that results in penalty interest starting to accrue again. That issue is in the case. It's been in the case since our initial objection. And in addition in our initial objection, we made the argument that even if you ignore all of that other stuff, CWC still miscalculated penalty interest because they didn't account for interest on advances, they didn't account for additional trust fund expenses, and under Section 311D of the PSA, that — those items have to be offset against any amount of penalty interest. So when they're sitting here saying in their reply brief that we never made these arguments, it's just flat-out untrue. We did, and we have pressed both of them, as Mr. Cross indicated, we have pressed both of them in our summary judgment briefing. We affirmatively moved for summary judgment on the — on the interest on advances point under Section 311D, and that issue is squarely before the district court. The one other issue I want to hit, which Mr. — which my adversary mentioned, is this concept of the risk of a collusive settlement. Okay. First of all, Appaloosa has, from the very beginning, again, going all the way back to the state court litigation in November of 2015, has pursued this case very aggressively and is interested in maximizing the recovery for the trust, because Appaloosa believes that even though we're aligned on this side of the table at the moment, Appaloosa believes that what happened here was a very clear breach of the — of the PSA. And Appaloosa's perspective in this case goes beyond simply this case. Appaloosa is an active CMBS investor, and what happens in this case has implications for special servicer behavior in other cases, and that's very important to Appaloosa. Moreover, there's no way there could be a collusive settlement under this case, and the principal reason is that this is a TIP proceeding, which was brought initially by the trustee. The trustee would have to sign off on any settlement, and I will virtually guarantee you from my own dealings with CMBS and RIMBS trustees is that even if we reached a settlement, the trustee would insist that notice be given to all certificate holders and that it be presented to the court for approval. So if there — if we — even if Appaloosa wanted to engage in a collusive settlement, it can't happen in this case. I see my time has expired. Unless the court has any further questions, I will sit down. Thank you. Thank you. For your argument. Mr. — is it Grace or — Grace. Grace. Three quick points, Your Honor. With respect to this last point about the collusive settlement, it's impossible for Cobalt to know what it would present to the trustee or what it would enable the trustee to present to the court when it has no access to discovery materials and has — will have no access to the history of the negotiation of the settlement. So the theoretical — not theoretical, but the actual possibility that the trustee will be involved in — in the final approval of a settlement is not protection against collusion because Cobalt is left unable to know the facts that will tell it whether collusion took place and whether, had it evolved, it would have negotiated a different settlement. And the trustee may well also not have access to that. Secondly, just briefly in response to one point that Mr. Cross made — Excuse me. The trustee could get access to it if it wanted to, couldn't it? It could, but — Yes. And the trustee's duty is to protect all interests, right? Except that Cobalt will be unable to bring things to the attention of the trustee in the same way that the two settling parties will. And realistically, the way trustees work is by examining things that are brought before it and not by initiating their own investigations beyond what the settling parties bring to their attention. With respect to notice to our client and its then-directors, CW is the asset manager for Cobalt v. R. If it notified them of this case, it would be in a position to prove that, and it hasn't. And most importantly, I'd like to dwell for my last 33 seconds on this question of the impending conflict over the issue of the distribution date. If eventual gain-on-sale proceeds are distributed as though they were received in January 2016, which is what our client firmly believes should happen, then we will continue to remain ahead of Appaloosa, and Appaloosa, as we say in our brief, will receive nothing out of the first $419.5 million. On the other hand, if the distribution is made as of the date on which it's received, the priority is likely to be completely reversed. In footnote 6, as we've discussed, we brought that attention to the possibility of the court. If that happened today, it would be reversed. And the mere fact that both counsel are now expecting the arrival of that issue in the case simply underscores the further prejudice that will accrue to Cobalt from being forced to sit on the side. Kagan. Kagan. Do you have any opportunity to bring that observation to the attention of the district court? Your Honor, the district court told Innisoft that it could intervene again if that any of the proceeds were gain-on-sale proceeds. We don't know now whether this issue is going to come up before the court reaches that decision or not. All right. Thank you very much. I think we have the arguments. We'll take the matter under advisement.